JOHN D. GIFFIN, CASB No. 89608
john.giffin@kyl.com
JOSEPH A. WALSH II, CASB No. 143694
joe.walsh@kyl.com
JOHN COX, CASB No. 197687
john.cox@kyl.com
NICOLE S. BUSSI, CASB No. 252763
nicole.bussi@kyl.com
KEESAL, YOUNG & LOGAN
A Professional Corporation
Four Embarcadero Center, Suite 1500
San Francisco, California  94111
Telephone:   (415) 398-6000
Facsimile:    (415) 981-0136

Attorneys for Defendant and Counter-Claimant
REGAL STONE, LTD.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, acting by and through the Department of Transportation,<br><br>Plaintiff,<br><br>vs.<br><br>REGAL STONE, LTD., HANJIN SHIPPING CO., LTD., CONTI CAIRO KG, NSB NEIDERELBE SYNERGY MARITIME, LTD., *In Personam*; M/V COSCO BUSAN, their engines, tackle, equipment, appurtenances, freights, and cargo *In Rem*,<br><br>Defendants.<br>REGAL STONE, LTD.,<br><br>Counter-Claimant,<br><br>vs.<br><br>THE PEOPLE OF THE STATE OF CALIFORNIA, acting by and through The Department of Transportation,<br><br>Counter-Defendant. | Case No. IN ADMIRALTY 2268 EMC<br><br>**ANSWER TO COMPLAINT FOR ALLISION DAMAGE, AFFIRMATIVE DEFENSES AND COUNTERCLAIM AGAINST THE PEOPLE OF THE STATE OF CALIFORNIA**<br><br>*Jury Trial Demanded* |

- 1 -

KYL_SF462464

ANSWER TO COMPLAINT FOR ALLISION DAMAGE, AFFIRMATIVE DEFENSES AND COUNTERCLAIM AGAINST THE PEOPLE OF THE STATE OF CALIFORNIA - Case No. IN ADMIRALTY 2268 EMC

1

2          Defendant REGAL STONE, LTD. ("Regal Stone") responds to Plaintiff's

3   Complaint as follows:

4          1.    In response to Plaintiff's un-numbered Paragraphs titled

5   "Jurisdiction and Venue," Regal Stone admits that this Court has subject matter

6   jurisdiction over Plaintiff's claims.

7          2.    Regal Stone admits that venue in this Court is proper.  Regal Stone

8   has insufficient information and belief concerning Plaintiff's allegations concerning the

9   ownership of the highway bridge in the Counties of Alameda and San Francisco known

10  as the San Francisco-Oakland Bay Bridge, and therefore based upon its lack of

11  information and belief, denies in their entirety, all further allegations contained therein.

12         3.    In response to Plaintiff's numbered paragraphs, Regal Stone

13  responds as follows:

14         4.    Regal Stone denies in their entirety those allegations contained in

15  Paragraphs 3, 4, 7, 9 and 10 of Plaintiff's Complaint.

16         5.    In response to Paragraph 1 of Plaintiff's Complaint, Regal Stone

17  admits that the Plaintiff is a sovereign state of the United States.  Regal Stone has

18  insufficient information to admit or deny the remaining allegations in Paragraph 1 of

19  Plaintiff's Complaint and therefore based upon its lack of information and belief, denies

20  those allegations in their entirety.

21         6.    In response to Paragraph 2 of Plaintiff's Complaint, Regal Stone

22  admits that the COSCO BUSAN was, on November 7, 2007, a vessel engaged in

23  transporting freight in international commerce.  All other allegations contained therein

24  are denied in their entirety.

25         7.    In response to Paragraph 5 of Plaintiff's Complaint, Regal Stone

26  admits that it is a Hong Kong based company and was, on or about November 7, 2007

27  and at all times relevant hereto, the owner of the vessel M/V COSCO BUSAN.  All other

28

KYL_SF462464

ANSWER TO COMPLAINT FOR ALLISION DAMAGE, AFFIRMATIVE DEFENSES AND
COUNTERCLAIM AGAINST THE PEOPLE OF THE STATE OF CALIFORNIA - Case No. IN
ADMIRALTY 2268 EMC

1  allegations contained therein are denied in their entirety.

2          8.    In response to Paragraph 6 of Plaintiff's Complaint, Regal Stone

3  admits that Hanjin Shipping Co., Ltd. charters the COSCO BUSAN from Defendant

4  Regal Stone, Ltd.  Regal Stone has insufficient information to respond to additional

5  allegations contained in Paragraph 6 and therefore based upon its lack of information

6  and belief denies those allegations in their entirety.

7          9.    In response to Paragraph 8 of Plaintiff's Complaint, Regal Stone

8  admits that on November 7, 2007, the COSCO BUSAN allided with the San Francisco-

9  Oakland Bay Bridge, causing damage to the bridge.  All other allegations contained

10  therein are denied in their entirety.

11          10.   In response to Paragraph 11 of Plaintiff's Complaint, Regal Stone

12  admits that by reason of the allision alleged in Plaintiff's Complaint, certain damages

13  were sustained, including, among others, damages involving the repair of the bridge.

14  Regal Stone has insufficient information to respond to further allegations contained in

15  Paragraph 11 of Plaintiff's Complaint and therefore based upon its lack of information

16  and belief denies those allegations in their entirety.

17          11.   In response to Paragraph 12 of Plaintiff's Complaint, Regal Stone

18  admits that the Court has subject matter jurisdiction over Plaintiff's claims.  All other

19  allegations contained therein are denied in their entirety.

20  **AFFIRMATIVE DEFENSES**

21          In further answer to Plaintiff's Complaint, and as separate and distinct

22  affirmative defenses, Defendant alleges the following defenses:

23          12.   AS A FIRST, SEPARATE, DISTINCT, AFFIRMATIVE DEFENSE to

24  the Complaint, Defendant alleges that the Complaint and each and every allegation

25  therein, fails to state a claim upon which relief may be granted.

26          13.   AS A SECOND, SEPARATE, DISTINCT, AFFIRMATIVE DEFENSE

27  to the Complaint, Defendant alleges that Plaintiff's claims are barred by the doctrines of

28

1 | waiver and estoppel.

2 |      14.    AS A THIRD, SEPARATE. DISTINCT, AFFIRMATIVE DEFENSE
3 | to the Complaint, Defendant alleges that Defendants Regal Stone and the M/V COSCO
4 | BUSAN are entitled to limitation under 46 USC § 183 for Plaintiff's common law causes
5 | of action and non-Oil Pollution Act of 1990 claims and/or non-Lempert-Keene Seastrand
6 | Oil Spill Prevention Act claims.

7 |      15.    AS A FOURTH, SEPARATE, DISTINCT, AFFIRMATIVE DEFENSE
8 | to the Complaint, Defendant is informed and believes and thereon alleges that, by
9 | exercise of reasonable efforts, Plaintiff could have mitigated the amount of damages
10 | allegedly suffered, but Plaintiff failed and/or refused and continues to fail and/or refuse,
11 | to exercise efforts to mitigate its damages, and therefore Plaintiff's recovery, if any, must
12 | be barred or diminished accordingly.

13 |      16.    AS A FIFTH, SEPARATE, DISTINCT, AFFIRMATIVE DEFENSE to
14 | the Complaint, Defendant alleges that the alleged damages for which Plaintiff seeks to
15 | hold Defendants liable resulted in whole or in part from the negligent, deliberate,
16 | intentional, reckless, and/or unlawful acts or omissions of third parties, and Defendants
17 | are not responsible for or liable to Plaintiff for any such acts or omissions on the part of
18 | third parties.

19 |      17.    AS A SIXTH, SEPARATE, DISTINCT, AFFIRMATIVE DEFENSE to
20 | the Complaint, Defendant alleges that Plaintiff has failed to join all indispensable
21 | parties.

22 |      18.    AS A SEVENTH, SEPARATE, DISTINCT, AFFIRMATIVE
23 | DEFENSE to the Complaint, Defendant alleges the Defendant is entitled to recoupment
24 | and/or setoff against any recovery that may be awarded in favor of Plaintiff.

25 |      19.    AS AN EIGHTH, SEPARATE, DISTINCT, AFFIRMATIVE
26 | DEFENSE to the Complaint, Defendant alleges the Defendant is entitled to indemnity
27 | and/or contribution against any recovery that may be awarded in favor of Plaintiff.

28 |

KYL_SF462464

ANSWER TO COMPLAINT FOR ALLISION DAMAGE, AFFIRMATIVE DEFENSES AND
COUNTERCLAIM AGAINST THE PEOPLE OF THE STATE OF CALIFORNIA - Case No. IN
ADMIRALTY 2268 EMC

20.    AS A NINTH, SEPARATE, DISTINCT, AFFIRMATIVE DEFENSE to the Complaint, Defendant reserves the right to assert additional affirmative defenses.

## COUNTER-CLAIM

Defendant and Counter-Claimant Regal Stone, Ltd. ("Regal Stone") alleges:

21.    The Court has jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.  Alternatively, the Court has jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1333.

22.    Counter-Defendant is a sovereign state of the United States.

23.    Regal Stone was, on or about November 7, 2007 and at all times relevant hereto, the owner of the vessel M/V COSCO BUSAN ("COSCO BUSAN").  The COSCO BUSAN is a vessel in excess of 300 gross tons.

24.    The State of California compels every vessel over 300 gross tons scheduled to maneuver in the waters inside the Golden Gate Bridge to be piloted by a United States Coast Guard and State of California licensed San Francisco Bar Pilot. This is known as compulsory pilotage.

25.    John J. Cota ("Pilot Cota") boarded the COSCO BUSAN as a compulsory pilot on November 7, 2007 as required by California law, and navigated the vessel west from the Port of Oakland towards the San Francisco-Oakland Bay Bridge.

26.    Under Pilot Cota's compulsory pilotage, the COSCO BUSAN allided with the western span of the Bridge resulting in a 200 foot long tear in the hull of the ship and a spill of approximately 53,000 gallons of fuel oil into the San Francisco Bay (the "Incident").  Regal Stone, as the owner of the vessel, was designated the Responsible Party by the United States under the Oil Pollution Act of 1990 ("OPA '90") and by the State of California, Office of Spill Prevention and Response.

27.    As a result of being designated the Responsible Party, Regal Stone has been required to, among other things, pay for all removal costs for the November 7,

KYL_SF462464

ANSWER TO COMPLAINT FOR ALLISION DAMAGE, AFFIRMATIVE DEFENSES AND COUNTERCLAIM AGAINST THE PEOPLE OF THE STATE OF CALIFORNIA - Case No. IN ADMIRALTY 2268 EMC

2007 oil spill as well as all other damages, disbursements and costs relating to that incident including, but not limited to: the cost to repair the COSCO BUSAN, loss of hire, port fees and expenses, crew wages and expenses, loss of use, response costs and cleanup expenses,  consultants' and specialist fees, natural resource damages, assessment costs, third party claims, claims by municipalities and government agencies and/or class action lawsuits, litigation costs, attorneys fees and civil penalties.  The complete costs and damages are undetermined at this time, but will be ascertainable once the cleanup, response, natural resource damage assessment and litigation are completed, but are expected to be in excess of $60,000,000.

28.    Section 1100 of the California Harbors and Navigation Code ("the Code") states that it is the policy of the State of California to ensure the safety of persons, vessels and property using San Francisco Bay and to avoid damage to such waters and surrounding ecosystems as a result of vessel collision or damage, by providing competent, efficient and regulated pilotage for vessels.  Section 1101 of the Code provides that the legislature finds and declares that "a program of pilot regulation and licensing is necessary in order to ascertain and guarantee the qualifications, fitness and reliability of qualified personnel who can provide safe pilotage entering and using the bays of San Francisco. . . ."

29.    Section 1171.5 of the Code directs the State of California, acting by and through the Board of Pilot Commissioners for the Bays of San Francisco, San Pablo and Suisan ("Board of Pilot Commissioners"), to adopt standards that are equal to or exceed standards for obtaining federal endorsements, and that conform with and support the state policy specified in sections 1100 and 1101, referred to above.  It also requires the Board of Pilot Commissioners to adopt rules and regulations that "require pilots to be qualified to perform all pilot duties."

30.    Section 1175 of the Code provides that "No person shall be licensed as a pilot unless . . . the person is of good mental and physical health. . . ."

ANSWER TO COMPLAINT FOR ALLISION DAMAGE, AFFIRMATIVE DEFENSES AND COUNTERCLAIM AGAINST THE PEOPLE OF THE STATE OF CALIFORNIA - Case No. IN ADMIRALTY 2268 EMC

1    31.    Section 1176 of the Code further provides that "pilots . . . shall

2 undergo physical examinations in accordance with standards prescribed by the Board in

3 conjunction with the renewal of their license.  The examination shall designate that each

4 pilot or inland pilot is fit to perform his or her duties as a pilot."

5    32.    The Board of Pilot Commissioners has adopted regulations,

6 published in Title 7 of the California Code of Regulations.  Section 217 of Title 7

7 addresses medical examinations of pilots.  It provides that an applicant for the renewal

8 of a pilot license "shall be medically examined prior to . . . the renewal of his license."

9    33.    In 2006 and 2007, prior to the oil spill, Pilot Cota disclosed medical

10 conditions and his use of medications that rendered him unfit for duty, medically

11 disqualified and prone to periods of lack of situational awareness.

12    34.    Prior to November 7, 2007, the Board of Pilot Commissioners knew

13 or should have known Pilot Cota's disclosures, medical history and/or medical condition

14 prior to the incident.

15    35.    The Board of Pilot Commissioners was negligent in employing,

16 licensing, training and supervising Pilot Cota, insofar as it failed to determine that Pilot

17 Cota was not medically fit for duty pursuant to the applicable regulations. Specifically,

18 despite Pilot Cota's medical history and medical condition prior to the accident, the

19 Board of Pilot Commissioners failed to revoke his license and instead granted him an

20 annual renewal.

21    36.    In addition to the duty to ensure the medical fitness of pilots,

22 the Board of Pilot Commissioners also has a duty to investigate pilot incidents and,

23 when appropriate, to discipline pilots, including suspension and revocation of pilotage

24 licenses.

25    37.    California Harbors & Navigation Code Division 5, Chapter 2, Section

26 1171.5 directs the Board of Pilot Commissioners to adopt "reasonable rules and

27 regulations that require pilots to be qualified to perform all pilot duties."

28

ANSWER TO COMPLAINT FOR ALLISION DAMAGE, AFFIRMATIVE DEFENSES AND
COUNTERCLAIM AGAINST THE PEOPLE OF THE STATE OF CALIFORNIA - Case No. IN
ADMIRALTY 2268 EMC

38.    California Harbors & Navigation Code Division 5, Chapter 2, Section Section 1181 provides the Board of Pilot Commissioners with the authority to revoke or suspend a license for, among other things, "negligently, ignorantly or willfully running any vessel on shore or otherwise rendering it liable to damage..." and/or a pilot's "inability to comply with the standards of health or physical condition requisite to the duties of a pilot...."

39.    Regal Stone is informed and believes that in or about 2004, Pilot Cota was investigated by the Board of Pilot Commissioners for acting enraged and irrational while piloting a United States Navy Warship.  The Board of Pilot Commissioners found Pilot Cota to be experiencing a "medical" issue requiring independent psychological evaluation.

40.    Regal Stone is informed and believes that in February 2006, Pilot Cota was responsible for the grounding of a vessel, which the Board of Pilot Commissioners found to be caused by a lack of "situational awareness."

41.    Regal Stone is informed and believes that the Board of Pilot Commissioners was on notice that Pilot Cota lacked the requisite skill, was unable to comply with the standards requisite to the duties of a pilot, was incompetent, unreliable, medically and/or mentally unfit or otherwise unqualified to provide safe pilotage based on a series of other incidents, mishaps, near misses and other reports of pilotage errors, including, but not limited to, those set forth above.

42.    The Board of Pilot Commissioners was negligent in employing, licensing, training and supervising Pilot Cota, insofar as it failed to exercise due care in properly investigating incidents involving Pilot Cota.

43.    The Board of Pilot Commissioners was negligent in employing, licensing, training and supervising Pilot Cota, insofar as it failed to exercise due care in exercising its statutory authority in response to incidents involving Pilot Cota.

44.    The State of California, acting by and through the Board of Pilot

KYL_SF462464
ANSWER TO COMPLAINT FOR ALLISION DAMAGE, AFFIRMATIVE DEFENSES AND COUNTERCLAIM AGAINST THE PEOPLE OF THE STATE OF CALIFORNIA - Case No. IN ADMIRALTY 2268 EMC

Commissioners, by failing to properly employ, license, train and supervise Pilot Cota, created a dangerous condition which proximately caused the allision of the COSCO BUSAN with the San Francisco-Oakland Bay Bridge on or about November 7, 2007.

45.    The State of California owed a duty to Defendant and Counter-Complainant Regal Stone and the Defendant COSCO BUSAN, *in rem*, to ensure that Pilot Cota was properly employed, trained, licensed and supervised and that Pilot Cota's employment, training, licensing and supervision did not create a dangerous condition.

46.    The State of California owed a duty to Regal Stone to ensure that Pilot Cota was properly employed, trained, licensed and supervised so that, on or about November 7, 2007, he would properly and safely pilot the COSCO BUSAN.

47.    Regal Stone relied on Counter-Defendant to properly employ, train, license and supervise Pilot Cota.

48.    The State of California breached such duties by failing to properly employ, train, license and supervise Pilot Cota, and as a result of such breach caused damage to the COSCO BUSAN, and to Regal Stone, in the form of, but not limited to, the cost to repair the COSCO BUSAN, loss of hire, port fees and expenses, crew wages and expenses, loss of use, response costs and clean-up costs, consultant and specialist fees, natural resource damages, assessment costs, costs to pay third-party claims, claims by municipalities and government agencies and/or class action lawsuits, litigation costs, attorneys' fees and civil penalties.  The complete cost and damages are undetermined at this time but are believed to be in excess of $60,000,000.

49.    Defendant's counter-claim arises out of the same transaction or occurrence upon which Plaintiff maintains its claim against Regal Stone.

## FIRST COUNTER-CLAIM

### [Setoff]

50.    Regal Stone realleges and incorporates by reference each and every allegation contained in paragraph 19 through 47, inclusive, as though set forth therein.

KYL_SF462464

51.    Regal Stone was designated the Responsible Party for the Incident and is obligated to pay costs associated with the oil spill, including but not limited to: the cost to repair the COSCO BUSAN, loss of hire, port fees and expenses, crew wages and expenses, loss of use, response costs and cleanup expenses, consultants' and specialist fees, natural resource damages, assessment costs, third party claims, claims by municipalities and government agencies and/or class action lawsuits, litigation costs, attorneys fees, civil penalties.

52.    The Incident was the result of the wrongful conduct of the State of California in failing to use due care in its licensing, supervision and training of Pilot Cota.

53.    Regal Stone is entitled to a setoff from the State of California for any damages it paid or will pay as a result of the Incident.

## SECOND COUNTER-CLAIM

### [Recoupment]

54.    Regal Stone realleges and incorporates by reference each and every allegation contained in paragraph 19 through 51 inclusive, as though set forth therein.

55.    Regal Stone was designated the Responsible Party for the Incident and is obligated to pay costs associated with the oil spill, including but not limited to the cost to repair the COSCO BUSAN, loss of hire, port fees and expenses, crew wages and expenses, loss of use, response costs and cleanup expenses, consultants' and specialist fees, natural resource damages, assessment costs, third party claims, claims by municipalities and government agencies and/or class action lawsuits, litigation costs, attorneys fees, civil penalties.

56.    The Incident was the result of the wrongful conduct of the State of California in failing to use due care in its licensing, supervision and training of Pilot Cota.

57.    Regal Stone is entitled to recoup any damages it paid or will pay as a

KYL_SF462464

ANSWER TO COMPLAINT FOR ALLISION DAMAGE, AFFIRMATIVE DEFENSES AND COUNTERCLAIM AGAINST THE PEOPLE OF THE STATE OF CALIFORNIA - Case No. IN ADMIRALTY 2268 EMC

1  result of the oil spill from the State of California.

2  ## THIRD COUNTER-CLAIM

3  [Indemnity]

4      58.    Regal Stone realleges and incorporates by reference each and every

5  allegation contained in paragraph 19 through 55, inclusive, as though set forth therein.

6      59.    Regal Stone was designated the Responsible Party for the Incident

7  and is obligated to pay costs associated with the oil spill, including but not limited to the

8  cost to repair the COSCO BUSAN, loss of hire, port fees and expenses, crew wages and

9  expenses, loss of use, response costs and cleanup expenses,  consultants' and specialist

10  fees, natural resource damages, assessment costs, third party claims, claims by

11  municipalities and government agencies and/or class action lawsuits, litigation costs,

12  attorneys fees, civil penalties.

    60.    The Incident was the result of the wrongful conduct of the State of

13  California in failing to use due care in its licensing, supervision and training of Pilot

14  Cota.

15      61.    Regal Stone is entitled to indemnification of any damages it paid or

16  will pay as a result of the oil spill from the State of California.

17  ## FOURTH COUNTER-CLAIM

18  [Contribution]

19      62.    Regal Stone realleges and incorporates by reference each and every

20  allegation contained in paragraph 19 through 59, inclusive, as though set forth therein.

21      63.    Regal Stone was designated the Responsible Party for the Incident

22  and is obligated to pay costs associated with the oil spill, including but not limited to the

23  cost to repair the COSCO BUSAN, loss of hire, port fees and expenses, crew wages and

24  expenses, loss of use, response costs and cleanup expenses,  consultants' and specialist

25  fees, natural resource damages, assessment costs, third party claims, claims by

26  municipalities and government agencies and/or class action lawsuits, litigation costs,

- 11 -

KYL_SF462464

1 | attorneys fees, civil penalties.

2 |      64.     The Incident was the result of the wrongful conduct of the State of

3 | California in failing to use due care in its licensing, supervision and training of Pilot

4 | Cota.

5 |      65.     Regal Stone is entitled to contribution pursuant to 33 U.S.C. § 2709

6 | and general maritime law for any removal costs and/or damages it paid or will pay as a

7 | result of the Incident from the State of California under federal and/or state law,

8 | including, but not limited to, OPA '90 (33 U.S.C. § 2701 *et seq*.) and the Lempert Keene

9 | Seastrand Oil Prevention and Response Act (Cal. Govt. Code § 8670 *et seq*).

10 | **FIFTH COUNTER-CLAIM**

11 | [Negligence/Negligence *Per Se*
12 | California Government Code §§ 815.2 and 815.4]

13 |      66.     Regal Stone realleges and incorporates by reference each and every

14 | allegation contained in paragraph 19 through 63, inclusive, as though set forth therein.

15 |      67.     The State of California has a duty to ensure that any San Francisco

16 | Bar Pilot appointed to navigate a vessel is properly licensed, trained, and supervised.

17 |      68.     The State of California breached its duty to ensure that Pilot Cota

18 | was properly licensed, trained, and supervised.

19 |      69.     The State of California's breach of this duty proximately caused the

20 | allision between the COSCO BUSAN and the San Francisco-Oakland Bay Bridge which

21 | resulted in the oil spill.

22 |      70.     Regal Stone has incurred damages as a result of the State of

23 | California's negligence including, but not limited to the cost to repair the COSCO

24 | BUSAN, loss of hire, port fees and expenses, crew wages and expenses, loss of use,

25 | response costs and cleanup expenses, consultants' and specialist fees, natural resource

26 | damages, assessment costs, third party claims, claims by municipalities and government

27 | agencies and/or class action lawsuits, litigation costs, attorneys fees, civil penalties.

28 |

KYL_SF462464

ANSWER TO COMPLAINT FOR ALLISION DAMAGE, AFFIRMATIVE DEFENSES AND
COUNTERCLAIM AGAINST THE PEOPLE OF THE STATE OF CALIFORNIA - Case No. IN
ADMIRALTY 2268 EMC

**SIXTH COUNTER-CLAIM**

[Failure to Discharge Mandatory Duty
California Government Code § 815.6]

71.    Regal Stone realleges and incorporates by reference each and every allegation contained in paragraph 19 through 68, inclusive, as though set forth therein.

72.    The Board of Pilot Commissioners, as an agency of the State of California, is under a mandatory duty imposed by the California Harbors and Navigation Code §§ 1154 *et. seq.* to properly license, train, and supervise all San Francisco Bar Pilots.

73.    The Board of Pilot Commissioners failed to discharge its duties and improperly licensed, trained, and supervised Pilot Cota.

74.    Regal Stone has incurred damages as a result of the State of California's failure to discharge its duties including, but not limited to the cost to repair the COSCO BUSAN, loss of hire, port fees and expenses, crew wages and expenses, loss of use, response costs and cleanup expenses, consultants' and specialist fees, natural resource damages, assessment costs, third party claims, claims by municipalities and government agencies and/or class action lawsuits, litigation costs, attorneys fees, civil penalties.

**SEVENTH COUNTER-CLAIM**

[Breach of Trust]

75.    Regal Stone realleges and incorporates by reference each and every allegation contained in paragraph 19 through 72, inclusive, as though set forth therein.

76.    The Board of Pilot Commissioners is required by California Harbors and Navigation Code §§ 1154 *et. seq* to properly train, license, and supervise San Francisco Bar Pilots to ensure the safety of public.

77.    This requirement creates a public trust in the State of California to exercise its duties with due care and to avoid violating any duty or guaranty the State of

KYL_SF462464

ANSWER TO COMPLAINT FOR ALLISION DAMAGE, AFFIRMATIVE DEFENSES AND COUNTERCLAIM AGAINST THE PEOPLE OF THE STATE OF CALIFORNIA - Case No. IN ADMIRALTY 2268 EMC

1  California has made to the public.

2       78.    The Board of Pilot Commissioners, by negligently training,

3  supervising, and licensing Pilot Cota, failed in its obligation to exercise its duties with

4  due care and breached its duty of guaranty and duty of warranty and as a result caused

5  harm to the public's trust.

6       79.    Regal Stone has incurred damages as a result of the State of

7  California's breach of trust including, but not limited to the cost to repair the COSCO

8  BUSAN, loss of hire, port fees and expenses, crew wages and expenses, loss of use,

9  response costs and cleanup expenses,  consultants' and specialist fees, natural resource

10  damages, assessment costs, third party claims, claims by municipalities and government

11  agencies and/or class action lawsuits, litigation costs, attorneys fees, civil penalties.

12  **EIGHTH COUNTER-CLAIM**

13  [Dangerous Condition of Public Property
14  California Government Code § 835]

15       80.    Regal Stone realleges and incorporates by reference each and every

16  allegation contained in paragraph 19 through 77, inclusive, as though set forth therein.

17       81.    The State of California knowingly and unreasonably created a

18  dangerous condition by its acts and omissions related to the improper licensing, training,

19  and supervision of Pilot Cota.

20       82.    The San Francisco Bay is a public property.

21       83.    Pilot Cota was medically unfit to navigate the COSCO BUSAN and

22  the State of California created an unsafe condition in the San Francisco Bay when it

23  directed Pilot Cota to navigate Regal Stone's vessel.

24       84.    Pilot Cota's history of prior pilot incidents rendered him unfit for

25  pilotage and the State of California created an unsafe condition in the San Francisco

26  Bay when it directed Pilot Cota to navigate Regal Stone's vessel.

27       85.    Regal Stone has incurred damages as a result of the State of

28  California's creation of a dangerous condition including, but not limited to the cost to

- 14 -   KYL_SF462464

1   repair the COSCO BUSAN, loss of hire, port fees and expenses, crew wages and

2   expenses, loss of use, response costs and cleanup expenses,  consultants' and specialist

3   fees, natural resource damages, assessment costs, third party claims, claims by

4   municipalities and government agencies and/or class action lawsuits, litigation costs,

5   attorneys fees, civil penalties.

6   ### PRAYER FOR RELIEF

7           WHEREFORE, Defendant and Counter-Claimant Regal Stone asks that

8   the State of California's claim be denied in its entirety, that Counter-Claimant recover

9   its damages from the State of California, and further that the  State of California be

10  required to pay Regal Stone for all additional damages resulting from the above-alleged

11  acts of the State of California.

12  ### JURY DEMAND

13          Defendant demands trial by jury of all issues in this action.

14

15

16

17  DATED:  June 3, 2008                    /s/ John D. Giffin_____
                                           JOHN D. GIFFIN
18                                         JOSEPH A. WALSH, II
                                           JOHN COX
19                                         NICOLE S. BUSSI
                                           KEESAL, YOUNG & LOGAN
20                                         ATTORNEYS FOR DEFENDANT
                                           REGAL STONE, LTD.
21

22

23

24

25

26

27

28

- 15 -

KYL_SF462464

ANSWER TO COMPLAINT FOR ALLISION DAMAGE, AFFIRMATIVE DEFENSES AND
COUNTERCLAIM AGAINST THE PEOPLE OF THE STATE OF CALIFORNIA - Case No. IN
ADMIRALTY 2268 EMC