JOHN D. GIFFIN, CASB NO. 89608
john.giffin@kyl.com
JOSEPH A. WALSH II, CASB NO.143694
joe.walsh@kyl.com
GORDON C. YOUNG, CASB NO.158100
gordon.young@kyl.com
CHRISTOPHER A. STECHER, CASB NO. 215329
christopher.stecher@kyl.com
DAVID A. TONG, CASB NO. 238971
david.tong@kyl.com
KEESAL, YOUNG & LOGAN
A Professional Corporation
450 Pacific Avenue
San Francisco, California 94133
Telephone:    (415) 398-6000
Facsimile:    (415) 981-0136

Attorneys for Defendant and Counterclaimant
REGAL STONE LIMITED

EDMUND G. BROWN JR.
ATTORNEY GENERAL OF THE STATE OF CALIFORNIA
TYLER B. PON
SUPERVISING DEPUTY ATTORNEY GENERAL
JUDITH J. LOACH, STATE BAR NO. 162030
judith.loach@doj.ca.gov
JEFFREY VINCENT, STATE BAR NO. 161013
jeffrey.vincent@doj.ca.gov
DEPUTY ATTORNEYS GENERAL
1515 Clay Street, Suite 2000
Oakland, CA 94612-1413
Telephone:    (510) 622-2199 / (510) 622-2127
Facsimile:    (510) 622-2121

Attorneys for Plaintiff and Counter-Defendant State of California

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT CALIFORNIA

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, acting by and through the DEPARTMENT OF TRANSPORTATION,<br><br>Plaintiff,<br><br>vs.<br><br>REGAL STONE LIMITED, HANJIN SHIPPING CO., LTD., CONTI CAIRO KG, NSB NEIDERELBE, SYNERGY MARITIME, LTD., *in personam;* M/V COSCO BUSAN, their engines, tackle, equipment, appurtenances, freights, and cargo *In Rem,* | Case No. C 08 02268 (SC)<br><br>IN ADMIRALTY<br><br>**STIPULATION TO ALLOW DEFENDANTS TO FILE A SECOND AMENDED COUNTERCLAIM** |

KYL_SF468285

|  |  |
|---|---|
| | Defendants. ) |
| **REGAL STONE LIMITED,** | ) |
| | ) |
| | Counter-Claimant, ) |
| **vs.** | ) |
| | ) |
| **THE PEOPLE OF THE STATE OF CALIFORNIA,** | ) |
| **acting by and through the DEPARTMENT OF** | ) |
| **TRANSPORTATION,** | ) |
| | Counter-Defendant. ) |

Plaintiff and Counter Defendant State of California ("Plaintiff" or the "State") and Defendant and Counterclaimant REGAL STONE LIMITED ("Regal Stone"), by and through their respective counsel of record, hereby enter into this Stipulation Permitting Regal Stone to File a Second Amended Counterclaim.  The State and Regal Stone are collectively referred to hereinafter as the "Parties."

WHEREAS the State filed its Complaint in this matter on May 1, 2008; and

WHEREAS Regal Stone filed its original Answer and Counterclaim on June 3, 2008; and

WHEREAS Regal Stone filed a First Amended Answer and Counterclaim on August 21, 2008; and

WHEREAS the State filed a motion to dismiss Regal Stone's First Amended Answer and Counterclaim on September 15, 2008; and

WHEREAS the hearing on the State's motion to dismiss currently is scheduled for November 7, 2008; and

WHEREAS there are no trial dates or other current deadlines regarding filing of claims or responsive pleadings; and

WHEREAS Regal Stone has learned new information that it would wishes to add to its Counterclaim against the State; and

WHEREAS the Parties have mutually agreed that Regal Stone should be allowed to amend the First Amended Answer and Counterclaim to allege new facts against The State in the form attached hereto as "Exhibit A";

IT IS HEREBY STIPULATED BY THE PARTIES AS FOLLOWS:

1.      The State's motion to dismiss Regal Stone's First Amended Counterclaim, currently

- 1 -

KYL_SF468285

1    scheduled for hearing on November 7, 2008, will be withdrawn without prejudice.

2        2.      Regal Stone may file a Second Amended Answer and Counterclaim in the form

3    attached hereto as "Exhibit A."

4        3.      Regal Stone shall file its Second Amended Answer and Counterclaim within ten (10)

5    days of this Stipulation.

6        4.      The State shall have thirty (30) days after service of the Second Amended Answer and

7    Counterclaim to respond thereto.

8        5.      In the event that the State moves to dismiss Regal Stone's Second Amended Answer

9    and Counterclaim, the hearing on the State's motion shall be scheduled pursuant to Local Rule 7-2;

10       6.      Any opposition briefs or reply briefs regarding the State's motion shall be filed in

11   accordance with Local Rule 7-3.

12                                KEESAL, YOUNG & LOGAN

13   Dated:  October 21, 2008      /s/ Gordon C. Young
14                                JOHN D. GIFFIN
                                  JOSEPH A. WALSH II
15                                GORDON C. YOUNG
                                  CHRISTOPHER A. STECHER
16                                DAVID A. TONG

17                                Attorneys for Defendant and Counterclaimant
18                                REGAL STONE LIMITED

19                                Attorney General of the State of California

20
21   Dated:  October 21, 2008      /s/ Judith J. Loach
                                  EDMUND G. BROWN JR.
22                                TYLER B. PON
                                  JUDITH J. LOACH
23                                JEFFREY VINCENT

24                                Attorneys for Plaintiff and Counter-Defendant State of
                                  California
25
26
27
28

STIPULATION TO ALLOW DEFENDANT TO FILE SECOND AMENDED COUNTERCLAIM – CASE NO. C 08
02268 (SC)

UNITED STATES DISTRICT COURT
IT IS SO ORDERED
Judge Samuel Conti
10/22/08
NORTHERN DISTRICT OF CALIFORNIA

KYL_SF468285

# EXHIBIT A

STIPULATION TO ALLOW DEFENDANT TO FILE SECOND AMENDED COUNTERCLAIM – CASE NO. C 08 02268 (SC)

KYL_SF468285

1  JOHN D. GIFFIN, CASB NO. 89608
   john.giffin@kyl.com
2  JOSEPH A. WALSH II, CASB NO.143694
   joe.walsh@kyl.com
3  GORDON C. YOUNG, CASB NO.158100
   gordon.young@kyl.com
4  CHRISTOPHER A. STECHER, CASB NO. 215329
   christopher.stecher@kyl.com
5  DAVID A. TONG, CASB NO. 238971
   DAVID.TONG@KYL.COM
6  KEESAL, YOUNG & LOGAN
   A Professional Corporation
7  450 Pacific Ave.
   San Francisco, California  94133
8  Telephone:   (415) 398-6000
   Facsimile:    (415) 981-0136
9
10 Attorneys for Defendant and Counter-Claimant
11 REGAL STONE LIMITED

12                  **UNITED STATES DISTRICT COURT**

13                 **NORTHERN DISTRICT OF CALIFORNIA**

14 THE PEOPLE OF THE STATE OF          ) Case No. C08-02268-SC
   CALIFORNIA, acting by and through the )
15 Department of Transportation,          ) IN ADMIRALTY
                                          )
16                        Plaintiff,      )
                                          ) **SECOND AMENDED ANSWER TO**
17              vs.                       ) **COMPLAINT FOR ALLISION**
                                          ) **DAMAGE, AFFIRMATIVE DEFENSES**
18 REGAL STONE, LIMITED., HANJIN         ) **AND COUNTERCLAIM AGAINST THE**
   SHIPPING CO., LTD., CONTI CAIRO KG,   ) **PEOPLE OF THE STATE OF**
19 NSB NEIDERELBE SYNERGY               ) **CALIFORNIA**
   MARITIME, LTD., *In Personam*; M/V    )
20 COSCO BUSAN, their engines, tackle,  )
   equipment, appurtenances, freights, and )
21 cargo *In Rem*,                       ) ***Jury Trial Demanded***
                                          )
22                        Defendants.     )
   ──────────────────────────────────    )
23 REGAL STONE LIMITED,                  )
                                          )
24                Counter-Claimant,       )
                                          )
25              vs.                       )
                                          )
26 THE PEOPLE OF THE STATE OF           )
   CALIFORNIA,                           )
27                                        )
                 Counter-Defendant.       )
28 ──────────────────────────────────

                           - 1 -

SECOND AMENDED ANSWER TO COMPLAINT FOR ALLISION DAMAGE, AFFIRMATIVE
DEFENSES AND COUNTERCLAIM AGAINST THE PEOPLE OF THE STATE OF CALIFORNIA —
CASE NO. C08-02268-SC IN ADMIRALTY

KYL_SF468079

1        Defendant REGAL STONE LIMITED ("Regal Stone") responds to Plaintiff

2  THE PEOPLE OF THE STATE OF CALIFORNIA, acting by and through the

3  Department of Transportation's ("Plaintiff" or the "State") Complaint as follows:

4        1.      In response to Plaintiff's un-numbered Paragraphs titled

5  "Jurisdiction and Venue," Regal Stone admits that this Court has subject matter

6  jurisdiction over Plaintiff's claims.

7        2.      Regal Stone admits that venue in this Court is proper.  Regal Stone

8  has insufficient information and belief concerning Plaintiff's allegations concerning the

9  ownership of the highway bridge in the Counties of Alameda and San Francisco known

10  as the San Francisco-Oakland Bay Bridge, and therefore based upon its lack of

11  information and belief, denies in their entirety, all further allegations contained therein.

12        3.      In response to Plaintiff's numbered paragraphs, Regal Stone

13  responds as follows:

14        4.      Regal Stone denies in their entirety those allegations contained in

15  Paragraphs 3, 4, 7, 9 and 10 of Plaintiff's Complaint.

16        5.      In response to Paragraph 1 of Plaintiff's Complaint, Regal Stone

17  admits that the Plaintiff is a sovereign state of the United States.  Regal Stone has

18  insufficient information to admit or deny the remaining allegations in Paragraph 1 of

19  Plaintiff's Complaint and therefore based upon its lack of information and belief, denies

20  those allegations in their entirety.

21        6.      In response to Paragraph 2 of Plaintiff's Complaint, Regal Stone

22  admits that the COSCO BUSAN was, on November 7, 2007, a vessel engaged in

23  transporting freight in international commerce.  All other allegations contained therein

24  are denied in their entirety.

25        7.      In response to Paragraph 5 of Plaintiff's Complaint, Regal Stone

26  admits that it is a Hong Kong based company and was, on or about November 7, 2007

27  and at all times relevant hereto, the owner of the vessel M/V COSCO BUSAN.  All other

28

- 2 -

SECOND AMENDED ANSWER TO COMPLAINT FOR ALLISION DAMAGE, AFFIRMATIVE
DEFENSES AND COUNTERCLAIM AGAINST THE PEOPLE OF THE STATE OF CALIFORNIA —
CASE NO. C08-02268-SC IN ADMIRALTY

KYL_SF468079

1  allegations contained therein are denied in their entirety.

2        8.    In response to Paragraph 6 of Plaintiff's Complaint, Regal Stone

3  admits that Hanjin Shipping Co., Ltd. charters the COSCO BUSAN from Defendant

4  Regal Stone.  Regal Stone has insufficient information to respond to additional

5  allegations contained in Paragraph 6 and therefore based upon its lack of information

6  and belief denies those allegations in their entirety.

7        9.    In response to Paragraph 8 of Plaintiff's Complaint, Regal Stone

8  admits that on November 7, 2007, the COSCO BUSAN allided with the San Francisco-

9  Oakland Bay Bridge, causing damage to the bridge.  All other allegations contained

10  therein are denied in their entirety.

11       10.    In response to Paragraph 11 of Plaintiff's Complaint, Regal Stone

12  admits that by reason of the allision alleged in Plaintiff's Complaint, certain damages

13  were sustained, including, among others, damages involving the repair of the bridge.

14  Regal Stone has insufficient information to respond to further allegations contained in

15  Paragraph 11 of Plaintiff's Complaint and therefore based upon its lack of information

16  and belief denies those allegations in their entirety.

17       11.    In response to Paragraph 12 of Plaintiff's Complaint, Regal Stone

18  admits that the Court has subject matter jurisdiction over Plaintiff's claims.  All other

19  allegations contained therein are denied in their entirety.

20

21                      **AFFIRMATIVE DEFENSES**

22

23      In further answer to Plaintiff's Complaint, and as separate and distinct

24  affirmative defenses, Defendant alleges the following defenses:

25       12.    AS A FIRST, SEPARATE, DISTINCT, AFFIRMATIVE DEFENSE to

26  the Complaint, Defendant alleges that the Complaint and each and every allegation

27  therein, fails to state a claim upon which relief may be granted.

28

- 3 -

KYL_SF468079

1    13.    AS A SECOND, SEPARATE, DISTINCT, AFFIRMATIVE DEFENSE

2    to the Complaint, Defendant alleges that Plaintiff's claims are barred by the doctrines of

3    waiver and estoppel.

4    14.    AS A THIRD, SEPARATE. DISTINCT, AFFIRMATIVE DEFENSE

5    to the Complaint, Defendant alleges that Defendants Regal Stone and the M/V COSCO

6    BUSAN are entitled to limitation under 46 USC § 183 for Plaintiff's common law causes

7    of action and non-Oil Pollution Act of 1990 claims and/or non-Lempert-Keene Seastrand

8    Oil Spill Prevention Act claims.

9    15.    AS A FOURTH, SEPARATE, DISTINCT, AFFIRMATIVE DEFENSE

10    to the Complaint, Defendant is informed and believes and thereon alleges that, by

11    exercise of reasonable efforts, Plaintiff could have mitigated the amount of damages

12    allegedly suffered, but Plaintiff failed and/or refused and continues to fail and/or refuse,

13    to exercise efforts to mitigate its damages, and therefore Plaintiff's recovery, if any, must

14    be barred or diminished accordingly.

15    16.    AS A FIFTH, SEPARATE, DISTINCT, AFFIRMATIVE DEFENSE to

16    the Complaint, Defendant alleges that the alleged damages for which Plaintiff seeks to

17    hold Defendants liable resulted in whole or in part from the negligent, deliberate,

18    intentional, reckless, and/or unlawful acts or omissions of third parties, and Defendants

19    are not responsible for or liable to Plaintiff for any such acts or omissions on the part of

20    third parties.

21    17.    AS A SIXTH, SEPARATE, DISTINCT, AFFIRMATIVE DEFENSE to

22    the Complaint, Defendant alleges that Plaintiff has failed to join all indispensable

23    parties.

24    18.    AS A SEVENTH, SEPARATE, DISTINCT, AFFIRMATIVE

25    DEFENSE to the Complaint, Defendant alleges the Defendant is entitled to recoupment

26    and/or setoff against any recovery that may be awarded in favor of Plaintiff.

27    19.    AS AN EIGHTH, SEPARATE, DISTINCT, AFFIRMATIVE

28    - 4 -

KYL_SF468079

1  DEFENSE to the Complaint, Defendant alleges the Defendant is entitled to indemnity

2  and/or contribution against any recovery that may be awarded in favor of Plaintiff.

3         20.    AS A NINTH, SEPARATE, DISTINCT, AFFIRMATIVE DEFENSE

4  to the Complaint, Defendant alleges that Plaintiff's damages must be reduced under the

5  "new for old" doctrine.

6         21.    AS A Tenth, SEPARATE, DISTINCT, AFFIRMATIVE DEFENSE to

7  the Complaint, Defendant reserves the right to assert additional affirmative defenses.

8

9  **COUNTER-CLAIM**

10

11      Regal Stone alleges the following for its counterclaim:

12         22.    The Court has jurisdiction over these counterclaims pursuant to 28

13  U.S.C. § 1331 and 28 U.S.C. § 1367.  Alternatively, the Court has jurisdiction over these

14  counterclaims pursuant to 28 U.S.C. § 1333.

15         23.    The State of California is a sovereign state of the United States.

16         24.    Regal Stone was, on or about November 7, 2007 and at all times

17  relevant hereto, the owner of the vessel M/V COSCO BUSAN ("COSCO BUSAN").  The

18  COSCO BUSAN is a vessel in excess of 300 gross tons.

19         25.    The State of California requires every foreign-flagged vessel over 300

20  gross tons scheduled to maneuver in the waters inside the Golden Gate Bridge to be

21  piloted by a San Francisco Bar Pilot licensed by both the United States Coast Guard and

22  the State of California.  This is known as compulsory pilotage.

23         26.    The Board of Pilot Commissioners for the Bays of San Francisco, San

24  Pablo and Suisan (the "Board of Pilot Commissioners" or the "Board") is an agency of the

25  State of California.

26         27.    The Board is responsible for the selection, training, and discipline of

27  state-licensed marine pilots for the waters of San Francsico Bay, and has the authority

28

- 5 -

SECOND AMENDED ANSWER TO COMPLAINT FOR ALLISION DAMAGE, AFFIRMATIVE
DEFENSES AND COUNTERCLAIM AGAINST THE PEOPLE OF THE STATE OF CALIFORNIA —
CASE NO. C08-02268-SC IN ADMIRALTY

KYL_SF468079

1    to renew and revoke the state pilot licenses for such pilots.

2          28.    Regal Stone is informed and believes and upon such information and

3    belief alleges that, at all relevant times, pilot John J. Cota ("Pilot Cota") was an agent,

4    employee, or independent contractor of the State of California.

5          29.    At all relevant times, Pilot Cota held a California license to pilot

6    vessels in the waters of San Francisco Bay.

7          30.    On November 7, 2007, Pilot Cota boarded the COSCO BUSAN as a

8    compulsory pilot as required by California law.  Thereafter, Pilot Cota navigated the

9    vessel west from the Port of Oakland towards the San Francisco-Oakland Bay Bridge.

10         31.    Under Pilot Cota's compulsory pilotage, the COSCO BUSAN allided

11   with the western span of the Bridge resulting in a 200 foot long tear in the hull of the

12   ship, damage to the San Francisco-Oakland Bay Bridge and a spill of approximately

13   53,000 gallons of fuel oil in the San Francisco Bay (the "Incident").  As discussed further

14   below, Pilot Cota's medical condition and loss of situational awareness were proximate

15   causes of the Incident.

16         32.    Regal Stone, as the owner of the vessel, was designated the

17   Responsible Party by the United States under the Oil Pollution Act of 1990 ("OPA '90")

18   and by the State of California, Office of Spill Prevention and Response.  As a result of

19   being designated the Responsible Party, Regal Stone has been required to, among other

20   things, pay for all removal costs for the November 7, 2007 oil spill, as well as all other

21   damages, disbursements and costs relating to that incident including, but not limited to:

22   the cost to repair the COSCO BUSAN, loss of hire, port fees and expenses, crew wages

23   and expenses, loss of use, response costs and cleanup expenses,  consultants' and

24   specialist fees, natural resource damages, assessment costs, third party claims, claims

25   by municipalities and government agencies and/or class action lawsuits, litigation costs,

26   attorneys fees and civil penalties.  The complete costs and damages are undetermined at

27   this time, but will be ascertainable once the cleanup, response, natural resource damage

28

- 6 -

SECOND AMENDED ANSWER TO COMPLAINT FOR ALLISION DAMAGE, AFFIRMATIVE
DEFENSES AND COUNTERCLAIM AGAINST THE PEOPLE OF THE STATE OF CALIFORNIA —
CASE NO. C08-02268-SC IN ADMIRALTY

KYL_SF468079

1   assessment and litigation are completed, but are expected to be in excess of $80,000,000.

2        33.     Section 1100 of the California Harbors and Navigation Code (the

3   "H&N Code") states that it is the policy of the State of California to ensure the safety of

4   persons, vessels and property using San Francisco Bay and to avoid damage to such

5   waters and surrounding ecosystems as a result of vessel collision or damage, by

6   providing competent, efficient and regulated pilotage for vessels.  Section 1101 of the

7   H&N Code provides, in pertinent part, that the legislature finds and declares that "a

8   program of pilot regulation and licensing is necessary in order to ascertain and

9   guarantee the qualifications, fitness and reliability of qualified personnel who can

10   provide safe pilotage entering and using the bays of San Francisco. . . ."

11        34.     Section 1171.5 of the H&N Code directs the State of California, to

12   adopt standards that are equal to or exceed standards for obtaining federal

13   endorsements, and that conform with and support the state policy specified in H&N

14   Code sections 1100 and 1101, referred to above.  The law also mandates that the Board

15   of Pilot Commissioners must adopt rules and regulations that "require pilots to be

16   qualified to perform all pilot duties."

17        35.     Section 1175 of the H&N Code provides that "No person shall be

18   licensed as a pilot unless . . . the person is of good mental and physical health. . . ."

19        36.     Section 1176 of the H&N Code further provides that "pilots . . . shall

20   undergo physical examinations in accordance with standards prescribed by the Board in

21   conjunction with the renewal of their license.  The examination shall designate that each

22   pilot or inland pilot is fit to perform his or her duties as a pilot."

23        37.The Board of Pilots has adopted regulations, published in Title 7 of the

24   California Code of Regulations.  Section 217 of Title 7 addresses medical examinations of

25   pilots.  It provides that an applicant for the renewal of a pilot license "***shall*** be medically

26   examined prior to . . . the renewal of his license." (Emphasis added).

27        38.     At all relevant times, the Board of Pilot Commissioners contracted

28

- 7 -

SECOND AMENDED ANSWER TO COMPLAINT FOR ALLISION DAMAGE, AFFIRMATIVE
DEFENSES AND COUNTERCLAIM AGAINST THE PEOPLE OF THE STATE OF CALIFORNIA —
CASE NO. C08-02268-SC IN ADMIRALTY

1   with and paid physicians to examine state pilots on an annual basis to evaluate their

2   fitness to perform the duties of a pilot.  The Board of Pilot Commissioners directed these

3   physicians to use guidelines entitled "Physical Examinations for Retention of Seafarers

4   in the Merchant Marine."  These guidelines were created in 1986 by the Seafarers

5   Health Improvement Program (SHIP).

6          39.    By 2007, the 1986 SHIP guidelines were outdated.  The guidelines

7   lacked any guidance on sleep disorders such as sleep apnea, and contained inadequate

8   information on prescription medications that could affect human performance.

9          40.    In June 1997, the National Transportation Safety Board (NTSB)

10  issued its report on the grounding the cruise ship STAR PRINCESS in Alaska.  It

11  concluded that the probable cause of the grounding was the poor performance of a state-

12  licensed pilot, which may have been exacerbated by chronic fatigue caused by sleep

13  apnea.

14         41.    The NTSB report recommended that State pilot boards, such as the

15  California Board of Pilot Commissioners, "advise pilots about the effect of fatigue on

16  performance, and about sleeping disorders such as sleep apnea."  It also recommended

17  that pilot boards review "in consultation with experts in occupational health, your

18  medical standards, guidelines, and examination forms to ensure that they require the

19  disclosure and appropriate evaluation of the history or presence of any medical

20  conditions, symptoms, or medication use that would affect an individual's fitness to pilot

21  a vessel."

22         42.    On information and belief, the Board of Pilot Commissioners did not

23  follow the NTSB recommendations to pilot boards contained in the report concerning the

24  Star Princess grounding.

25         43.    In1998, in response to the NTSB report, the US Coast Guard

26  published NVIC 2-98, which updated its medical standards, guidelines, and procedures

27  used to evaluate the fitness of merchant mariners.

28
                                    - 8 -
SECOND AMENDED ANSWER TO COMPLAINT FOR ALLISION DAMAGE, AFFIRMATIVE
DEFENSES AND COUNTERCLAIM AGAINST THE PEOPLE OF THE STATE OF CALIFORNIA —
CASE NO. C08-02268-SC IN ADMIRALTY

KYL_SF468079

1        44.    On October 15, 2003 the Staten Island Ferry Andrew J. Barberi

2 allided with a wharf, killing 11 and injuring 70 passengers.  An NTSB investigation

3 report into the allision, published in March 2005, found that the assistant captain of the

4 ferry was unresponsive to the fact that the ferry was rapidly closing on the wharf, and

5 had not disclosed certain of his medical conditions to the Coast Guard.  In its report, the

6 NTSB recommended that the Coast Guard implement additional medical tracking,

7 reporting and examination requirements for merchant mariners.

8        45.    In September 2006, in response to the NTSB report, the USCG

9 published draft NVIC xx-06, titled "Medical and Physical Evaluation Guidelines For

10 Merchant Mariner Credentials."   Although published as a draft, NVIC xx-06 stated

11 that "Coast Guard practices with respect to the physical and medical evaluation process

12 have evolved considerably since NVIC 2-98 was published in 1998.  This Circular

13 replaces the outdated NVIC 2-98.  It puts current Coast Guard practices into writing,

14 making them transparent for all to see and promoting their consistent application.  It is

15 not intended to, and in fact does not, change current Coast Guard practices with respect

16 to the physical and medical evaluation process."

17        46.    NVIC xx-2006 contained a list of potentially disqualifying medical

18 conditions that included obstructive sleep apnea and the use of prescription pain killers

19 and stimulants.  Mariners reporting these conditions are required to undergo a more

20 thorough review and medical screening before they can renew their licenses.

21        47.    At all relevant times, despite the fact that California law required

22 the Board of Pilot Commissioners to adopt standards for pilots that equal or exceed

23 federal standards, the Board of Pilot Commissioners continued to instruct physicians

24 examining state pilots to use the outdated and inadequate 1986 SHIP medical

25 standards.

26        48.    Despite the fact that the NTSB and the United States Coast Guard

27 had both published advice and recommendations that sleep apnea and the use of

28

SECOND AMENDED ANSWER TO COMPLAINT FOR ALLISION DAMAGE, AFFIRMATIVE
DEFENSES AND COUNTERCLAIM AGAINST THE PEOPLE OF THE STATE OF CALIFORNIA —
CASE NO. C08-02268-SC IN ADMIRALTY

KYL_SF468079

1  prescription pain killers and stimulants were potentially disqualifying conditions, the

2  Board of Pilot Commissioners did not convey this information to the medical doctors

3  that it hired to determine whether marine pilots were physically fit.

4       49.    In January 2007, Dr. Calza examined Pilot Cota as part of Pilot

5  Cota's state pilot license renewal process.  On information and belief, Dr. Calza used the

6  outdated, inadequate 1986 SHIP standards to evaluate Pilot Cota because those were

7  the standards the State directed him to use.   During this examination Pilot Cota

8  disclosed that he had then recently been diagnosed with obstructive sleep apnea, and

9  that he had prescriptions for pain killers and stimulants.

10       50.    Despite the fact that Pilot Cota disclosed these conditions, Dr. Calza

11  certified that Cota was fit to perform his duties under the 1986 SHIP standards.  Capt

12  Cota was not medically fit to perform the duties of a marine pilot in January 2007 or in

13  November 2007 when he steered the Cosco Busan into the Delta tower of the Bay

14  Bridge.

15       51    If the Board of Pilot Commissioners had discharged its mandatory

16  duties, Pilot Cota would not have been allowed to navigate the COSCO BUSAN on the

17  morning of the Incident.

18       52.    The Board of Pilot Commissioners was negligent in licensing,

19  training and supervising Pilot Cota, insofar as it failed to determine that Pilot Cota was

20  not medically fit for duty pursuant to the applicable statutes and regulations.

21  Specifically, despite Pilot Cota's medical history and medical condition prior to the

22  Incident, the Board of Pilot Commissioners failed to revoke his license and instead

23  granted him an annual renewal.

24       53.    California Harbors & Navigation Code Division 5, Chapter 2, Section

25  1171.5 directs the Board of Pilot Commissioners to adopt "reasonable rules and

26  regulations that require pilots to be qualified to perform all pilot duties."

27       54.    California H&N Code Section 1181 provides the Board of Pilot

28

- 10 -

SECOND AMENDED ANSWER TO COMPLAINT FOR ALLISION DAMAGE, AFFIRMATIVE DEFENSES AND COUNTERCLAIM AGAINST THE PEOPLE OF THE STATE OF CALIFORNIA — CASE NO. C08-02268-SC IN ADMIRALTY

KYL_SF468079

1  Commissioners with the authority to revoke or suspend a license for, among other

2  things, "negligently, ignorantly or willfully running any vessel on shore or otherwise

3  rendering it liable to damage..." and/or a pilot's "inability to comply with the standards

4  of health or physical condition requisite to the duties of a pilot...."

5      55.   Regal Stone is informed and believes and upon such information and

6  belief alleges that, in or about 2004, Pilot Cota was investigated by the Board of Pilot

7  Commissioners for acting enraged and irrational while piloting a United States Navy

8  Warship.  The Board of Pilot Commissioners found Pilot Cota to be experiencing a

9  "medical" issue requiring independent psychological evaluation.

10     56.   Regal Stone is informed and believes that in February 2006, Pilot

11 Cota was responsible for the grounding of a vessel, which the Board of Pilot

12 Commissioners found to be caused by a lack of "situational awareness."

13     57.   Regal Stone is informed and believes and upon such information and

14 belief alleges that the Board of Pilot Commissioners was on notice that Pilot Cota lacked

15 the requisite skill, was unable to comply with the standards requisite to the duties of a

16 pilot, was incompetent, unreliable,  medically and/or mentally unfit or otherwise

17 unqualified to provide safe pilotage based on a series of other incidents, mishaps, near

18 misses and other reports of pilotage errors, including, but not limited to, those set forth

19 above.

20     58.   The Board of Pilot Commissioners was negligent in licensing,

21 training and supervising Pilot Cota, insofar as it failed to exercise due care in properly

22 investigating incidents involving Pilot Cota.

23     59.   The Board of Pilot Commissioners was negligent in licensing,

24 training and supervising Pilot Cota, insofar as it failed to exercise due care in exercising

25 its statutory authority in response to incidents involving Pilot Cota.

26     60.   The State of California, by failing to properly license, train and

27 supervise Pilot Cota, created a dangerous condition which proximately caused the

28

- 11 -

SECOND AMENDED ANSWER TO COMPLAINT FOR ALLISION DAMAGE, AFFIRMATIVE
DEFENSES AND COUNTERCLAIM AGAINST THE PEOPLE OF THE STATE OF CALIFORNIA —
CASE NO. C08-02268-SC IN ADMIRALTY

KYL_SF468079

1    allision of the COSCO BUSAN with the San Francisco-Oakland Bay Bridge on or about

2    November 7, 2007.

3          61.    The State of California owed a duty to Regal Stone to ensure that

4    Pilot Cota was properly trained, licensed and supervised and that Pilot Cota's

5    employment, training, licensing and supervision did not create a dangerous condition.

6          62.    The State of California owed a duty to Regal Stone to ensure that

7    Pilot Cota was properly trained, licensed and supervised so that, on or about November

8    7, 2007, he would properly and safely pilot the COSCO BUSAN.

9          63.    The State of California owed a duty to Regal Stone to properly

10   investigate Pilot Cota's prior accidents and incidents, and to assess whether Pilot Cota

11   was physically fit to pilot vessels.

12         64.    The State of California hired doctors to examine pilots annually and

13   to report to the State whether they were fit to perform their duties.  The State was

14   negligent in the selection of such doctors, and in the training of such doctors to certify

15   that pilots were fit to perform their duties.

16         65.    The State of California hired doctors, psychiatrists, and health care

17   professionals to examine pilots annually and to report to the State whether they were fit

18   to perform their duties.  The doctors acted as agents of the state in performing these

19   examinations.  The doctors, including Dr. Charles Calza, who examined Pilot Cota and

20   certified that Pilot Cota was fit to perform his duties as a pilot, were negligent in their

21   examinations and certifications.  The doctors' negligence proximately caused the

22   Incident.

23         66.    Regal Stone relied on the State, to properly train, license and

24   supervise Pilot Cota.

25         67.    The State of California breached such duties by failing to properly

26   train, license and supervise Pilot Cota, and as a result of such breach caused damage to

27   the COSCO BUSAN, and to Regal Stone, in the form of, but not limited to, the cost to

28                                            - 12 -

SECOND AMENDED ANSWER TO COMPLAINT FOR ALLISION DAMAGE, AFFIRMATIVE
DEFENSES AND COUNTERCLAIM AGAINST THE PEOPLE OF THE STATE OF CALIFORNIA —
CASE NO. C08-02268-SC IN ADMIRALTY

1   repair the COSCO BUSAN, loss of hire, port fees and expenses, crew wages and

2   expenses, loss of use, response costs and clean-up costs, consultant and specialist fees,

3   natural resource damages, assessment costs, costs to pay third-party claims, claims by

4   municipalities and government agencies and/or class action lawsuits, litigation costs,

5   attorneys' fees and civil penalties.  The complete cost and damages are undetermined at

6   this time but are believed to be in excess of $80,000,000.

7         68.     Section 218 of regulations of the Board of Pilot Commissioners sets

8   forth the duties of the Port Agent.  The Port Agent is selected by the pilots and

9   confirmed by the Board of Pilot Commissioners.  The Port Agent is a dual agent, who

10   acts on behalf of the pilots and the Board, depending on the circumstances.

11         69.     The Board of Pilot Commissioners is liable for the negligence of the

12   Port Agent when he acts on behalf of the Board.

13         70.     The Port Agent is empowered or required under Section 218, to act

14   on behalf of the Board, to perform the following tasks: report all accidents involving

15   pilots to the board; report to the Board any matters which affect the ability of a pilot to

16   carry out his or her lawful duties; order the Bar closed for reasons of public, pilot or

17   vessel safety; report in writing whenever a pilot is incapacitated for more than 7 days;

18   perform drug and alcohol testing on pilots after serious marine incidents and when the

19   Port Agent believes a pilot is impaired by drugs of alcohol.

20         71.     The Port Agent was negligent in carrying out the duties and

21   responsibilities listed in the preceding paragraph.  This negligence was a contributing

22   proximate cause of the COSCO BUSAN incident.

23         72.     Regal Stone's counter-claims arise out of the same transactions or

24   occurrences upon which the State bases its claim against Regal Stone.

25                       **FIRST COUNTER-CLAIM**

26                             [Setoff]

27         73.     Regal Stone realleges and incorporates by reference each and every

28

- 13 -

SECOND AMENDED ANSWER TO COMPLAINT FOR ALLISION DAMAGE, AFFIRMATIVE
DEFENSES AND COUNTERCLAIM AGAINST THE PEOPLE OF THE STATE OF CALIFORNIA —
CASE NO. C08-02268-SC IN ADMIRALTY

KYL_SF468079

allegation contained in paragraph 22 through 72, inclusive, as though set forth therein.

74.     Regal Stone was designated the Responsible Party for the Incident and is obligated to pay costs associated with the oil spill, including but not limited to: the cost to repair the COSCO BUSAN, loss of hire, port fees and expenses, crew wages and expenses, loss of use, response costs and cleanup expenses, consultants' and specialist fees, natural resource damages, assessment costs, third party claims, claims by municipalities and government agencies and/or class action lawsuits, litigation costs, attorneys fees, civil penalties.

75.     At all relevant times, Pilot Cota was an employee, agent or independent contractor of the State of California and the Board of Pilot Commissioners.

76.     The Incident was the result of the wrongful conduct of the State of California in failing to use due care in its licensing, supervision and training of Pilot Cota.

77.     Regal Stone is entitled to a setoff from the State of California for any amounts or damages it paid or will pay as a result of the Incident.

### SECOND COUNTER-CLAIM

[Recoupment]

78.     Regal Stone realleges and incorporates by reference each and every allegation contained in paragraph 22 through 77 inclusive, as though set forth therein.

79.     Regal Stone was designated the Responsible Party for the Incident and is obligated to pay costs associated with the oil spill, including but not limited to: the cost to repair the COSCO BUSAN, loss of hire, port fees and expenses, crew wages and expenses, loss of use, response costs and cleanup expenses, consultants' and specialist fees, natural resource damages, assessment costs, third party claims, claims by municipalities and government agencies and/or class action lawsuits, litigation costs, attorneys fees, civil penalties.

80.     At all relevant times, Pilot Cota was an employee, agent or

- 14 -

SECOND AMENDED ANSWER TO COMPLAINT FOR ALLISION DAMAGE, AFFIRMATIVE DEFENSES AND COUNTERCLAIM AGAINST THE PEOPLE OF THE STATE OF CALIFORNIA — CASE NO. C08-02268-SC IN ADMIRALTY

KYL_SF468079

1    independent contractor of the State of California and the Board of Pilot Commissioners.

2        81.    The Incident was the result of the wrongful conduct of the State of

3    California in failing to use due care in its licensing, supervision and training of Pilot

4    Cota.

5        82.    Regal Stone is entitled to recoup from the State of California any

6    amounts or damages it paid or will pay as a result of the Incident.

7                              **THIRD COUNTER-CLAIM**

8                                   [Indemnity]

9        83.    Regal Stone realleges and incorporates by reference each and every

10    allegation contained in paragraph 22 through 82, inclusive, as though set forth therein.

11        84.    Regal Stone was designated the Responsible Party for the Incident

12    and is obligated to pay costs associated with the oil spill, including but not limited to: the

13    cost to repair the COSCO BUSAN, loss of hire, port fees and expenses, crew wages and

14    expenses, loss of use, response costs and cleanup expenses,  consultants' and specialist

15    fees, natural resource damages, assessment costs, third party claims, claims by

16    municipalities and government agencies and/or class action lawsuits, litigation costs,

17    attorneys fees, civil penalties.

18        85.    At all relevant times, Pilot Cota was an employee, agent or

19    independent contractor of the State of California and the Board of Pilot Commissioners.

20        86.    The Incident was the result of the wrongful conduct of the State of

21    California in failing to use due care in its licensing, supervision and training of Pilot

22    Cota.

23        87.    Regal Stone is entitled to indemnification from the State of

24    California for any amount or damages it paid or will pay as a result of the Incident.

25                              **FOURTH COUNTER-CLAIM**

26                                   [Contribution]

27        88.    Regal Stone realleges and incorporates by reference each and every

28

- 15 -

SECOND AMENDED ANSWER TO COMPLAINT FOR ALLISION DAMAGE, AFFIRMATIVE
DEFENSES AND COUNTERCLAIM AGAINST THE PEOPLE OF THE STATE OF CALIFORNIA —
CASE NO. C08-02268-SC IN ADMIRALTY

KYL_SF468079

1    allegation contained in paragraph 22 through 87, inclusive, as though set forth therein.

2         89.    Regal Stone was designated the Responsible Party for the Incident

3    and is obligated to pay costs associated with the oil spill, including but not limited to: the

4    cost to repair the COSCO BUSAN, loss of hire, port fees and expenses, crew wages and

5    expenses, loss of use, response costs and cleanup expenses,  consultants' and specialist

6    fees, natural resource damages, assessment costs, third party claims, claims by

7    municipalities and government agencies and/or class action lawsuits, litigation costs,

8    attorneys fees, civil penalties.

9         90.    At all relevant times, Pilot Cota was an employee, agent or

10   independent contractor of the State of California and the Board of Pilot Commissioners.

11        91.    The Incident was the result of the wrongful conduct of the State of

12   California in failing to use due care in its licensing, supervision and training of Pilot

13   Cota.

14        92.    Regal Stone is entitled to contribution pursuant to 33 U.S.C. § 2709

15   and general maritime law for any removal costs and/or damages it paid or will pay as a

16   result of the Incident from the State of California under federal and/or state law,

17   including, but not limited to, OPA '90 (33 U.S.C. § 2701 *et seq*.) and the Lempert Keene

18   Seastrand Oil Prevention and Response Act (Cal. Govt. Code § 8670 *et seq*).

19

20                            **FIFTH COUNTER-CLAIM**

21                        [Negligence / Negligence *Per Se* /
22                    California Government Code §§ 815.2 and 815.4]

23        93.    Regal Stone realleges and incorporates by reference each and every

24   allegation contained in paragraph 22 through 92, inclusive, as though set forth therein.

25        94.    The State of California has a duty to ensure that any San Francisco

26   Bar Pilot appointed to navigate a vessel is properly licensed, trained, and supervised.

27        95.    The State of California breached its duty to ensure that Pilot Cota

28                                     - 16 -

SECOND AMENDED ANSWER TO COMPLAINT FOR ALLISION DAMAGE, AFFIRMATIVE
DEFENSES AND COUNTERCLAIM AGAINST THE PEOPLE OF THE STATE OF CALIFORNIA —
CASE NO. C08-02268-SC IN ADMIRALTY

1  was properly licensed, trained, and supervised as an employee, agent or independent

2  contractor.

3      96.    The State of California's breach of this duty proximately caused the

4  allision between the COSCO BUSAN and the San Francisco-Oakland Bay Bridge which

5  resulted in the Incident.

6      97.    Regal Stone has incurred damages as a result of the State of

7  California's negligence including, but not limited to: the cost to repair the COSCO

8  BUSAN, loss of hire, port fees and expenses, crew wages and expenses, loss of use,

9  response costs and cleanup expenses, consultants' and specialist fees, natural resource

10  damages, assessment costs, third party claims, claims by municipalities and government

11  agencies and/or class action lawsuits, litigation costs, attorneys fees, civil penalties.

## SIXTH COUNTER-CLAIM

[Failure to Discharge Mandatory Duty
California Government Code § 815.6]

98.    Regal Stone realleges and incorporates by reference each and every

allegation contained in paragraph 22 through 97, inclusive, as though set forth therein.

99.    The Board of Pilot Commissioners, as an agency of the State of

California, is under a mandatory duty imposed by the H&N Code §§ 1154 *et. seq.* to

properly license, train, and supervise all San Francisco Bar Pilots.

100.    The Board of Pilot Commissioners failed to discharge its duties and

improperly licensed, trained, and supervised Pilot Cota, while he was an employee,

agent or independent contractor of the Board.

101.    Regal Stone has incurred damages as a result of the State of

California's failure to discharge its duties including, but not limited to: the cost to repair

the COSCO BUSAN, loss of hire, port fees and expenses, crew wages and expenses, loss

of use, response costs and cleanup expenses,  consultants' and specialist fees, natural

resource damages, assessment costs, third party claims, claims by municipalities and

- 17 -

KYL_SF468079

government agencies and/or class action lawsuits, litigation costs, attorneys fees, civil penalties.

## SEVENTH COUNTER-CLAIM

[Breach of Trust]

102.    Regal Stone realleges and incorporates by reference each and every allegation contained in paragraph 22 through 101, inclusive, as though set forth therein.

103.    The Board of Pilot Commissioners is required by H&N Code §§ 1154 *et. seq* to properly train, license, and supervise San Francisco Bar Pilots to ensure the safety of public.

104.    This requirement creates a public trust in the State of California to exercise its duties with due care and to avoid violating any duty or guaranty the State of California has made to the public.

105.    The Board of Pilot Commissioners, by negligently training, supervising, and licensing Pilot Cota, failed in its obligation to exercise its duties with due care and breached its duty of guaranty and duty of warranty and as a result caused harm to the public's trust.

106.    Regal Stone has incurred damages as a result of the State of California's breach of trust including, but not limited to: the cost to repair the COSCO BUSAN, loss of hire, port fees and expenses, crew wages and expenses, loss of use, response costs and cleanup expenses,  consultants' and specialist fees, natural resource damages, assessment costs, third party claims, claims by municipalities and government agencies and/or class action lawsuits, litigation costs, attorneys fees, civil penalties.

## EIGHTH COUNTER-CLAIM

[Dangerous Condition of Public Property
California Government Code § 835]

107.    Regal Stone realleges and incorporates by reference each and every allegation contained in paragraph 22 through 106, inclusive, as though set forth therein.

- 18 -

SECOND AMENDED ANSWER TO COMPLAINT FOR ALLISION DAMAGE, AFFIRMATIVE DEFENSES AND COUNTERCLAIM AGAINST THE PEOPLE OF THE STATE OF CALIFORNIA — CASE NO. C08-02268-SC IN ADMIRALTY

KYL_SF468079

108.    The State of California knowingly and unreasonably created a dangerous condition by its acts and omissions related to the improper licensing, training, and supervision of Pilot Cota while he was an employee, agent or independent contractor of the Board.

109.    The San Francisco Bay is a public property.

110.    San Francisco Bay often experiences heavy fog with reduced visibility conditions.  There are many obstructions and hazards to navigation within San Francisco Bay, including other vessel traffic and obstacles such as the San Francisco – Oakland Bay Bridge.

111.    The Port of Oakland is a large commercial port.  Large commercial vessels must navigate through San Francsico Bay to reach and depart from the Port of Oakland.  Large foreign flagged vessels such as container ships and tankers are under the control of state licensed marine pilots when they transit through San Francisco Bay.

112.    The State legislature, aware of the substantial risks posed to shipping in San Francisco Bay, required the Board of Pilot Commissioners to ensure that state pilots were fit and competent to navigate ships in the Bay

113.    By way of example, and without limitation, the Board of Pilot Commissioners was required to adopt standards for pilots that exceeded federal licensing standards.  Despite this requirement, the Board of Pilot Commissioners failed to update medical standards for pilots, or to heed to advice of the National Transportation Safety Board regarding the increased risks of accidents for persons suffering from sleep apnea.   The Board's failure to update and keep current its medical standards during a time when federal standards were being tightened resulted in the Board allowing marine pilots who were not medically fit to navigate large commercial vessels through San Francisco Bay.  In doing so, the Board increased the risk of accidents involving large commercial vessels in the Bay.

114.    Pilot Cota was medically unfit to navigate the COSCO BUSAN.  The

- 19 -

KYL_SF468079

1   State of California created an unsafe condition in the San Francisco Bay when it allowed

2   Pilot Cota to renew his pilot license and allowed him to navigate Regal Stone's vessel on

3   the morning of the Incident.

4        115.   The Board's failure to update its medical standards for marine pilots,

5   and its failure to revoke Cota's license, in combination with the frequent fog and hazards

6   to navigation in the Bay, created a hazardous condition in the Bay.

7        116.   Regal Stone has incurred damages as a result of the State of

8   California's creation of a dangerous condition including, but not limited to: the cost to

9   repair the COSCO BUSAN, loss of hire, port fees and expenses, crew wages and

10  expenses, loss of use, response costs and cleanup expenses,  consultants' and specialist

11  fees, natural resource damages, assessment costs, third party claims, claims by

12  municipalities and government agencies and/or class action lawsuits, litigation costs,

13  attorneys fees, civil penalties.

## NINTH COUNTERCLAIM

### [Vicarious Liability]

16       117.   Regal Stone realleges and incorporates by reference each and every

17  allegation contained in the preceding paragraphs of its counterclaim, as though set forth

18  therein.

19       118.   On information and believe, at all relevant times Pilot Cota was an

20  agent, employee, or servant of the State of California.

21       119.   On information and belief, at all relevant times Dr. Charles Calza

22  was an agent, employee, or servant of the State of California.

23       120.   On information and belief, at all relevant times, the Port Agents

24  were agents, employees or servants of the State of California.

25       121.   The negligence of Pilot Cota was a separate and independent cause of

26  the COSCO BUSAN allision with the Bay Bridge and Defendants' resulting damages.

27       122.   The negligence of Dr. Calza was a separate and independent cause of

28

- 20 -

SECOND AMENDED ANSWER TO COMPLAINT FOR ALLISION DAMAGE, AFFIRMATIVE DEFENSES AND COUNTERCLAIM AGAINST THE PEOPLE OF THE STATE OF CALIFORNIA — CASE NO. C08-02268-SC IN ADMIRALTY

KYL_SF468079

1   the COSCO BUSAN allision with the Bay Bridge and Defendants' resulting damages.

2   123.   The negligence of the Port Agents were separate and independent

3   causes of the COSCO BUSAN allision with the Bay Bridge and Defendants' resulting

4   damages.

5   124.   The State is vicariously liable for the negligence of Pilot Cota.

6   125.   The State is vicariously liable for the negligence of Dr. Calza.

7   126.   The State is vicariously liable for the negligence of the Port Agents.

8

9   ## PRAYER FOR RELIEF

10

11   WHEREFORE, Defendant and Counter-Claimant Regal Stone prays for the

12   following relief:

13   1.   That the State of California's claim be denied in its entirety;

14   2.   That any recovery by the State of California be decreased pursuant to

15   the remedies of set-off and recoupment;

16   3.   That Counter-Claimant recover its damages from the State of California;

17   4.   That Regal Stone be awarded its costs and fees in defending this action;

18   5.   For all other relief to which Regal Stone is entitled at law or in equity.

19   ## JURY DEMAND

20   Defendant demands trial by jury of all issues in this action.

21

22   DATED:  October __, 2008

JOHN D. GIFFIN
23   JOSEPH A. WALSH II
GORDON C. YOUNG
24   CHRISTOPHER A. STECHER
DAVID A. TONG
25   KEESAL, YOUNG & LOGAN

26
Attorneys for Defendant and Counterclaimant
27   REGAL STONE LIMITED

28
- 21 -

SECOND AMENDED ANSWER TO COMPLAINT FOR ALLISION DAMAGE, AFFIRMATIVE
DEFENSES AND COUNTERCLAIM AGAINST THE PEOPLE OF THE STATE OF CALIFORNIA —
CASE NO. C08-02268-SC IN ADMIRALTY

KYL_SF468079